PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES DEPARTMENT OF
LABOR,
            *Plaintiff-Appellee,*

            v.

NORTH CAROLINA GROWERS              No. 03-2380
ASSOCIATION, INCORPORATED; SEXTON
TREE FARMS AND SEXTON ASSOCIATES;
HIGHLAND FRASER FIRS; NEW RIVER
TREE COMPANY, as joint employers,
            *Defendants-Appellants.*

Appeal from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Voorhees, District Judge.
(CA-99-7-5)

Argued: June 2, 2004

Decided: August 2, 2004

Before WIDENER and WILLIAMS, Circuit Judges,
and Robert R. BEEZER, Senior Circuit Judge
of the United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Reversed, vacated, and remanded with instructions by published opin-
ion. Judge Williams wrote the opinion, in which Judge Widener and
Senior Judge Beezer joined.

**COUNSEL**

**ARGUED:** William Randolph Loftis, Jr., CONSTANGY, BROOKS & SMITH, L.L.C., Winston-Salem, North Carolina, for Appellants. Paula Wright Coleman, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Appellee. **ON BRIEF:** Robin E. Shea, Kristine M. Howard, CONSTANGY, BROOKS & SMITH, L.L.C., Winston-Salem, North Carolina, for Appellants. Howard M. Radzely, Solicitor of Labor, Steven J. Mandel, Associate Solicitor, Paul L. Frieden, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Appellee.

---

**OPINION**

WILLIAMS, Circuit Judge:

In this case, the North Carolina Growers Association, Inc.,[1] Sexton Tree Farms and Sexton Associates, Highland Fraser Firs, and New River Tree Co. (collectively the Growers) appeal the district court's ruling in favor of the United States Department of Labor (the DOL). The district court found that the Growers violated § 207 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201-219 (West 1998 & Supp. 2003) (FLSA), by failing to pay overtime to their workers involved in Christmas tree farming. On appeal, the Growers argue that, because their employees are "employed in agriculture," they are exempted from the FLSA's overtime pay provisions under § 213(b)(12), and that the district court erred in finding that Christmas tree farming was not "agriculture" as that term is defined by § 203(f) of the FLSA. The Growers also appeal the grant of a permanent injunction against future violations of the FLSA. Because we find that Christmas tree farming is "agriculture," we reverse the grant of summary judgment in favor of the DOL and remand the case to the district court with instructions to enter judgment in favor of the Growers. We also vacate the permanent injunction against the Growers.

---

[1]North Carolina Growers Association is a trade association that aids its members in obtaining seasonal farm labor by assisting with the complicated legal matters that arise in the hiring of such labor.

## I.

The facts of this case are essentially undisputed. Although consumers decorate their homes with Christmas trees for just a few weeks each year, cultivating a proper Christmas tree takes substantial effort and management.[2] The process begins with the planting of tree seedlings in a nursery. While the trees grow in the nursery, they are treated with fertilizer, herbicides, and pesticides to encourage growth and reduce the incidence of weeds, insects, and disease. After approximately three years, the seedlings are transplanted into lineout beds, where they remain for two more seasons. The small trees are then lifted and planted into cultivated soil that is tested by the North Carolina Department of Agriculture on a yearly basis to determine whether mineral or fertilizer applications are necessary. The trees are planted in rows, about four or five feet apart, and they remain in the ground until they are harvested for use as seasonal trees, generally seven to ten years after being planted in the ground. While in the soil, the trees are pruned and sheared yearly; they also are treated twice a year with herbicides and fertilized once or twice a year. When necessary, pesticides are applied. Most Christmas tree farms use sprinklers to water the tree seedlings while they grow in the nurseries and lineout beds and sometimes when the trees are planted in the field.

Christmas trees are usually harvested with chainsaws at the rate of 1,000 per day, although some are bagged for sale with the root ball intact. In choosing which trees to harvest, Christmas tree farmers grade the trees based on "uniform density, good shape, color and needle retention" as well as height. (J.A. at 353.) Christmas trees are harvested individually based on these criteria; growers do not harvest entire rows at a time. After the sorted trees are cut down, they are baled, taken to storage, and then hauled in bulk to their end destinations. Christmas trees are sold for ornamental purposes, typically during the Christmas season. At the close of the Christmas season,

---

[2]Christmas tree farming has evolved since the FLSA was enacted in 1938. Before the 1960's, Christmas tree harvesting was more in the nature of "enterprising individuals who took what nature provided." (J.A. at 353.) However, since the mid 1960's, Christmas tree farming has evolved into the current system where growers plant and cultivate the trees for harvest.

purchased trees usually are discarded, although consumers who pur-
chase Christmas trees with the root ball intact usually replant them for
ornamental purposes after the Christmas season.

## II.

This appeal results from an enforcement action brought by the
DOL against the Growers for their failure to pay overtime to their sea-
sonal workers, as required by § 207 of the FLSA. The FLSA requires
employers to pay overtime to most hourly workers, but employees
who are "employed in agriculture" are exempt from the FLSA's over-
time provisions. 29 U.S.C.A. § 213(b)(12) (West 1999). Because
Christmas tree farm operations intensify as the Christmas season
approaches, most farms require seasonal labor to help harvest the
trees. In 1993, the Growers sought to hire a workforce of legal aliens
to perform these seasonal services on their Christmas tree farms. The
Growers applied for and received permission to hire seasonal alien
workers as non-agricultural employees under the Immigration Reform
and Control Act (IRCA). 8 U.S.C.A. § 1188 (West 2004). Because
the DOL classified these alien workers as non-agricultural employees
in granting the applications, the Growers considered Christmas tree
farming to be non-agricultural and accordingly paid the seasonal
workers overtime. In 1995, however, the DOL informed the Growers
that it considered the seasonal workers to be agricultural employees
for purposes of IRCA. Under IRCA, employers of seasonal agricul-
tural employees must provide the employees with certain statutorily
defined benefits, such as free housing, meals, and transportation. *See*,
*e.g.*, 8 U.S.C.A. § 1188(c)(4); 20 C.F.R. § 655.102(b). After receiving
notice of the DOL's position, the Growers began providing the bene-
fits required by IRCA to their seasonal employees but ceased paying
their workers overtime, believing that the DOL considered their
employees agricultural and thus exempt from the overtime provisions
of the FLSA.

Contrary to the Growers' belief, the DOL informed them that it
considered the Growers' seasonal employees to be agricultural
employees under IRCA, but that they were not employees engaged in
agriculture under the FLSA.[3] The Growers objected to this system of

---

[3]IRCA defines agricultural laborers as those whose work qualifies as
"agricultural labor" under Section 3121(g) of the Internal Revenue Code

dual classification, whereby they were required to provide free housing and other benefits while also paying overtime to the laborers, and, until the filing of this enforcement action, they refused to pay overtime to their seasonal workers.[4]

The Secretary of Labor filed an enforcement action against the Growers on August 5, 1998, requesting back pay and an injunction for the Growers' alleged violation of the FLSA. Following discovery, both parties moved for summary judgment on the issue of whether Christmas tree farming fell within the agricultural exemption to the FLSA. On September 4, 2003, by published opinion, the district court granted summary judgment in favor of the DOL and awarded back pay in an amount to be determined by the parties. The district court also issued an injunction against the Growers to ensure their future compliance with the FLSA.[5] *See Chao v. North Carolina Growers Ass'n*, 280 F. Supp. 2d 500, 511-12 (W.D.N.C. 2003). The Growers appeal, and we have jurisdiction under 28 U.S.C.A. § 1291 (West 1993). On appeal, the Growers argue that Christmas tree farming falls within the definition of "agriculture" in § 203(f), while the DOL contends that, as determined by the district court, § 203(f) is ambiguous,

and as those employed in "agriculture" as defined in the FLSA. 8 U.S.C.A. § 1101(a)(15)(H)(ii)(a). As relevant here, Section 3121(g) provides that "agricultural labor" includes labor done "on a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity." 26 U.S.C.A. § 3121(g)(1) (West Supp. 2004). The DOL maintains that the Growers' seasonal workers qualify under the definition of "agricultural labor" found in the Internal Revenue Code, but not as workers employed in "agriculture" as defined in the FLSA.

[4]Although the DOL's complaint alleged that the Growers began violating the FLSA on March 25, 1996, the parties later stipulated that back pay should be calculated from August 4, 1996 to August 5, 1998 in conformity with the FLSA's two year limitations period. *See* 29 U.S.C.A. § 255(a) (West 1998).

[5]The district court found an "inherent unfairness" in the DOL's treatment of Christmas tree farmers, but it believed that redress should be pursued in Congress. (J.A. at 47.) The DOL's brief notes that two bills have been introduced in Congress that would specifically add Christmas tree farming to the definition of agriculture in § 203(f).

and we should defer to its interpretive bulletins, which define Christmas tree farming as forestry, and not agriculture. Although we recognize that the DOL's interpretation is long standing, we agree with the Growers that Christmas tree farming falls within the definition of agriculture in § 203(f).

### III.

### A.

We review the district court's grant of summary judgment in favor of the DOL de novo. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 221 (4th Cir. 2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (West 1994); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B.

The FLSA is the "minimum wage/maximum hour law." *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1266 (4th Cir. 1996) (internal quotation marks omitted). The congressional purpose in passing the FLSA was "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). Pursuant to that goal, coverage under the FLSA is construed "liberally to apply to the furthest reaches consistent with congressional direction." *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959). Accordingly, "[e]xemptions from or exceptions to the Act's requirements are to be narrowly construed." *Monahan*, 95 F.3d at 1267 (quoting *Johnson v. City of Columbia*, 949 F.2d 127, 129-30 (4th Cir. 1991)) (alteration in original). Furthermore, "application [of an exemption is] limited to those establishments plainly and unmistakably within [its] terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). The employer bears the burden of proving it falls within an exemption. *Mitchell v. Kentucky Fin. Co.*, 359 U.S. 290, 291 (1959).

When interpreting statutes we start with the plain language. *Lamie v. United States Tr.*, 124 S. Ct. 1023, 1030 (2004). "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id.* (internal quotation marks omitted). In interpreting the plain language of a statute, "[w]e give the words of a statute their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." *Williams v. Taylor*, 529 U.S. 420, 431 (2000) (internal quotation marks omitted.) We also abide by "the cardinal rule that statutory language must be read in context [because] a phrase gathers meaning from the words around it." *Gen. Dynamics Land Sys., Inc. v. Cline,* 124 S. Ct. 1236, 1246 (2004) (internal quotation marks omitted).

The statute provides that employees who are "employed in agriculture" are exempt from the overtime provisions of the FLSA. 29 U.S.C.A. § 213(b)(12). Agriculture is defined in § 203(f) of the FLSA as follows:

> "Agriculture" includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of Title 12), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C.A. § 203(f) (West 1998).

Section 203(f) thus creates both a primary and a secondary definition of agriculture. *See Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762 (1949). The primary definition of "'[a]griculture' includes farming in all its branches[,] . . . includ[ing] the . . . cultivation, growing, and harvesting of any agricultural or hor-

ticultural commodities." 29 U.S.C.A. § 203(f). The secondary defini-
tion is broader and "includes any practices, whether or not themselves
farming practices, which are performed either by a farmer or on a
farm, incidently to or in conjunction with 'such' farming." *Farmers
Reservoir*, 337 U.S. at 763. Forestry and lumbering operations are
examples of practices which may fit within the secondary definition
of agriculture but only if performed on a farm or by a farmer as an
incident to other farming operations.[6]

Although the placement of forestry in the secondary definition does
not necessarily indicate that Congress intended to exclude forestry
from the primary definition, other provisions of the FLSA make clear
that forestry and lumbering operations are excluded from the primary
definition of agriculture. Section 213(b)(28) exempts:

> [A]ny employee employed in planting or tending trees,
> cruising, surveying, or felling timber, or in preparing or
> transporting logs or other forestry products to the mill, pro-
> cessing plant, railroad, or other transportation terminal, if
> the number of employees employed by his employer in such
> forestry or lumbering operations does not exceed eight.

29 U.S.C.A. § 213(b)(28)(West 1999).

This exemption would be superfluous if Congress had not intended
to exclude forestry from the primary definition of agriculture in
§ 203(f).[7] *See Hibbs v. Winn*, 124 S. Ct. 2276, 2286 (2004) ("A statute
should be construed so that effect is given to all its provisions, so that
no part will be . . . superfluous.") Thus, § 213(b)(28) evidences the
implicit exclusion of forestry and lumbering operations from the
scope of the primary definition of agriculture under § 203(f) and also

---

[6]The Growers concede that because their Christmas tree farming is not
incident to any other farming practice, they cannot fit within the second-
ary definition. The Growers do contend, however, that operations con-
ducted after the harvesting of Christmas trees, such as shipping the trees
to storage facilities, fall within the secondary definition if Christmas tree
farming is within the primary definition of § 203(f).

[7]On appeal, the Growers have not addressed the applicability of this
exemption to their Christmas tree farms.

serves to define the scope of the forestry and lumbering operations so excluded.[8] With this framework in mind, we turn to the question before us.

The Growers argue that they are exempt from the FLSA's overtime provisions with respect to their Christmas tree workers because Christmas tree farming is agriculture under § 203(f). Specifically, the Growers argue that Christmas tree farming involves the cultivation of an agricultural or horticultural commodity. *See* 29 U.S.C.A. § 203(f). Giving the language of § 203(f) its contemporary, ordinary meaning, we agree.

Without question, modern Christmas trees are cultivated commodities, or "economic good[s]."[9] *Webster's Third New Int'l Dictionary* 458 (1986). As described above, they undergo extensive care and management before they are eventually harvested for sale to consumers. Thus, if Christmas trees are "agricultural" or "horticultural," their cultivation, growing, and harvesting is agriculture under § 203(f). Horticulture is "the science and art of growing . . . ornamental plants." *Id.* at 1093. Ornamental plants are those "having decorative quality or value." *Id.* at 1592. Because Christmas trees are ornamental plants that are grown and harvested, we believe that they are horticultural commodities.[10] Accordingly, the cultivation, growing, and harvesting of

---

[8]Congress did not title § 213(b)(28) as the definition section for forestry and lumbering operations, but as "there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning," we believe that the activities listed in § 213(b)(28) are the "forestry or lumbering operations" excluded by Congress from § 203(f)'s primary definition. *Atl. Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932),

[9]Our analysis applies only to those growers and practices before us. We offer no opinion on whether individuals who enter forested lands and cut wild-growing Christmas trees are workers employed in agriculture.

[10]The Departments of Agriculture in North Carolina and Oregon, the states with the two largest productions of Christmas trees in the United States, both consider Christmas tree farming to be horticulture. *See* North Carolina Dep't of Agric. and Consumer Serv. - Mktg. Div. Green Indus. Christmas Trees, *available at* http://www.ncagr.com/markets/commodit/ horticul/xmastree/ (listing Christmas trees as a horticultural commodity); *see also* Oregon Dep't of Agric., Nursery and Christmas Tree Program, *available at* http://oda.state.or.us/plant/nursery/index.html. (explaining that Christmas tree farms are licensed and monitored by horticulturists).

Christmas trees falls squarely within the primary definition of agriculture in § 203(f), and the Growers have met their burden of proving that they fall "plainly and unmistakably within [the exemption's] terms and spirit." *Arnold*, 361 U.S. at 392.[11]

The DOL maintains that even if Christmas tree farming fits within the express definition of agriculture under § 203(f), it is nonetheless excluded because it constitutes forestry, which Congress implicitly has excluded from the primary definition of agriculture. The DOL points to the many similarities between Christmas tree farming and forestry.[12] If the FLSA provided no guidance beyond § 203(f) as to what forestry operations Congress intended to exclude from the primary definition of agriculture, we might agree with the DOL that Christmas tree farming is an excluded forestry operation. Given the specific definition of "forestry or lumbering operations" in § 213(b)(28), however, it is clear that Christmas tree farming is not a "forestry or

---

[11]It would also not be unreasonable, however, to find that Christmas trees were agricultural commodities under § 203(f). Agriculture is, among other things, "the science or art of . . . harvesting crops," which are "plant[s] . . . that can be grown and harvested extensively for profit." *Webster's Third New Int'l Dictionary* 44, 540 (1986). Because Christmas trees are plants that are grown and harvested extensively for profit, it would also be reasonable to find that they are agricultural commodities. *See* Oregon Dep't of Agric., Story of the Week, *available at* http://oda.state.or.us/information/news/2003/031029trees.pdf (defining Christmas trees as one of Oregon's "top agricultural commodities").

[12]Like Christmas tree farming, forestry often involves the planting of trees in rows, occasional treatment with herbicides, and the cutting down of trees with chainsaws. There are, however, numerous differences between forestry and Christmas tree farming. Unlike a forestry tree, the Christmas tree is the commodity; no further processing is required before sale to the ultimate consumer. In addition to the distinction in end use, the cultivation techniques also differ. All of the Growers use mechanical planters and apply herbicide, pesticide, and fertilizer on an annual basis. The Growers also manage the Christmas trees during the trees' entire rotation. (J.A. at 299.) Forestry trees only receive herbicide, pesticide, and fertilizer early in their development and are not managed as intensively as Christmas trees. Christmas trees also are sheared and pruned regularly during growth, while forestry trees are not sheared at all and are pruned only early in their development.

lumbering operation[]" that Congress intended to exclude from the primary definition of agriculture.

While the definition of forestry and lumbering operations in § 213(b)(28) includes the "planting and tending of trees," reading that phrase in context, *see Cline*, 124 S.Ct. 1246, it is apparent that Congress was describing trees being used for traditional forestry purposes as "timber" and "pulp." *Webster's Third New Int'l Dictionary* at 890, 1840. Section 213(b)(28) refers also to "cruising, surveying, or felling timber," and to "preparing or transporting logs or other forestry products to the mill, [or] processing plant." 29 U.S.C.A. § 213(b)(28). These provisions help clarify that the phrase "planting and tending of trees" refers only to trees that will be used for their wood as timber or pulp.

The common meaning of other terms associated with traditional forestry support this reading of § 213(b)(28). Timber is "growing trees or their wood," specifically, "wood used for or suitable for building . . . or for carpentry or joinery." *Webster's Third New Int'l Dictionary* at 2394. Similarly, "lumbering" is "the business of cutting or getting timber or logs from the forest for lumber." *Id.* at 1345. The production of Christmas trees, which are sold for decorative use, not as lumber or as wood for building, does not fall within the common meaning of these terms. Because Christmas trees are not processed into pulp or harvested as timber, we conclude that Christmas tree farming is not forestry or lumbering as those terms are used in the FLSA.[13] Accordingly, we hold that the cultivation, growing, and harvesting of Christmas trees is agriculture as defined in § 203(f), and that the employees of the Growers are thus exempt from the overtime provisions of the FLSA.

---

[13]Our reading of § 213(b)(28) is confirmed by its legislative history. One proposal would have added "forestry in all its branches" to the primary definition of § 203(f). Its purpose would have been "to exclude the harvesters of the *timber* crop" from the overtime protections of the FLSA. 95 Cong. Rec. H11211 (emphasis added). Furthermore, in adopting the version codified at § 213(b)(28), supporters of the bill explained that "the small *lumberman* in the woods cannot operate in competition with the big operators." 95 Cong. Rec. H11212 (emphasis added). Thus, the legislative history also shows that Congress understood forestry to be the planting and tending of trees to be used as timber.

C.

We recognize that our interpretation of § 203(f) undercuts a lengthy history of DOL interpretation. At least since 1956, the DOL has interpreted § 203(f) to exclude Christmas tree farming. *See* 29 C.F.R. §§ 780.115, 780.200, 780.208 (2003). The DOL's interpretative bulletins, however, were adopted without notice and comment rulemaking and without a formal adjudication, and accordingly, lack the force of law. The Supreme Court has made clear that in such situations, we defer to the agency's interpretation only to the extent that the interpretation has the power to persuade. *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944); *see Christensen v. Harris County*, 529 U.S. 576, 587 (2000); *United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) ("*Chevron* did nothing to eliminate *Skidmore*'s holding that an agency's interpretation may merit some deference whatever its form . . . ."); *see also* 1 K. Davis & R. Pierce, Administrative Law Treatise § 3.5 (3d ed. 1994) ("Congress has not delegated to any agency the power to make policy decisions that bind courts and citizens through [interpretive rules].") The weight accorded interpretative bulletins "depend[s] upon the thoroughness evident in [the agency's] consideration, the validity of [the agency's] reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade." *Skidmore*, 323 U.S. at 140.

Although the DOL's interpretation has been consistent, we conclude that it lacks the power to persuade. Because the bulletins were not adopted after notice and comment rulemaking, they lack the thoroughness of such rules. For example, 29 C.F.R. § 780.115 provides that "[t]rees grown in forests and the lumber derived therefrom are not 'agricultural or horticultural commodities.' Christmas trees, whether wild or planted, are also not so considered." As the Growers note, this statement begs the question of why Christmas trees are not so considered. Without an explanation of how the DOL came to its conclusion, it is impossible for us to be persuaded by the DOL's reasoning. Similarly, § 788.10 provides that Christmas trees are "other forestry products" without any explanation. 29 C.F.R. § 788.10. Finally, 29 C.F.R. § 780.201, entitled "Meaning of 'forestry or lumbering operations,'" provides:

> The term "forestry or lumbering operations" refers to the cultivation and management of forests, the felling and trim-

ming of timber, the cutting, hauling, and transportation of timber, logs, pulpwood, cordwood, lumber, and like products, the sawing of logs into lumber or the conversion of logs into ties, posts, and similar products, and similar operations. It also includes the piling, stacking, and storing of all such products. The gathering of wild plants and of wild or planted Christmas trees are included.

Like §§ 780.115 and 788.10, this section provides no analysis as to why Christmas trees are included within "forestry or lumbering operations."

The bulletins also make an arbitrary distinction between Christmas tree farming and nursery trees. According to the DOL, trees grown at a nursery are agriculture. *See* 29 C.F.R. § 780.205 (defining agriculture to include "[s]owing seeds and otherwise propagating fruit, nut, shade, vegetable, and ornamental plants or trees (but not Christmas trees), and shrubs, vines, and flowers.") Under the statutory language there is no justifiable reason for the distinction between trees grown at a nursery and trees grown at a modern Christmas tree farm. Nursery operations involve the cultivation of horticultural and agricultural commodities, so, like Christmas tree farming, they fall within the primary definition of § 203(f). The DOL is correct that there are distinctions between the cultivation and growth of nursery trees and Christmas trees, but none of the distinctions are relevant under the statute.[14]

We also note that when the DOL originally promulgated these bulletins in the 1950s, Christmas tree farming as we know it today essentially did not exist. Prior to the late 1960s, Christmas trees were either cut down from the wild or planted and harvested with little or no management. As discussed above, contemporary Christmas tree operations involve extensive management. While the DOL's categorization of Christmas tree farming as non-agriculture may have been

[14]For instance, nursery trees undergo more intensive irrigation and fertilization than Christmas trees and have fewer naturally growing weeds in their soil. Nursery trees are usually grown in growbags or planted in fields and are sold individually for ornamental purposes after a shorter growing period than Christmas trees.

persuasive at the time the bulletins were promulgated, the significant changes in the industry's cultivation and management techniques since that time render the original bulletins unpersuasive. The DOL has reconsidered its position on Christmas tree farming on three occasions, most recently in 1991. On each occasion, the DOL has issued opinion letters adhering to its original interpretative bulletins. The DOL's letters, however, reject the position that Christmas tree farming is agriculture without any consideration of the evolution of the industry. Accordingly, we find that the DOL's reconsiderations also lack the power to persuade.

## IV.

Because Christmas tree farming falls within the primary definition of "agriculture" in § 203(f), we reverse the grant of summary judgment in favor of the DOL and remand the case with instructions for the district court to enter summary judgment in favor of the Growers. We also vacate the permanent injunction against the Growers.

*REVERSED, VACATED, AND REMANDED*
*WITH INSTRUCTIONS*