RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0242p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JOHN BARKS and BRENDA HOFFMAN, on behalf of themselves and others similarly situated,

    *Plaintiffs-Appellants,*

  *v.*

SILVER BAIT, LLC and BRUNO DURANT, individually,

    *Defendants-Appellees.*

No. 15-5175

---

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:11-cv-00126—Harry S. Mattice, Jr., District Judge.

Decided and Filed: October 2, 2015

Before: MERRITT, McKEAGUE, and WHITE, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:** Martin D. Holmes, M. Reid Estes, Jr., DICKINSON WRIGHT PLLC, Nashville, Tennessee, for Appellants. William A. Blue, Jr., CONSTANGY, BROOKS, SMITH & PROPHETE, LLP, Nashville, Tennessee, for Appellees.

---

**OPINION**

---

HELENE N. WHITE, Circuit Judge. John Barks and Brenda Hoffman appeal the district court's declaratory judgment, entered after a bench trial, holding that the term "agriculture" in the Fair Labor Standards Act (FLSA) includes the activities of their former employer, Silver Bait LLC (Silver Bait), in growing and raising worms for sale as fishing bait. We **AFFIRM**.

1

# I.

## A.

Bruno Durant, president of Silver Bait, moved to the United States from his native France in 1992 to grow worms. R. 67, Trial Tr., PID 1238; R. 82, Order, PID 1672. After raising worms on a farm in Georgia for nearly a decade, Durant relocated to rural Tennessee, where he purchased 750 acres of land. R. 47, Defs.' Pretrial Br., PID 257; R. 67, Trial Tr., PID 1258. Durant and his wife established the current Silver Bait operations on the property in early 2005. R. 67, Trial Tr., PID 1268–69; R. 82, Order, PID 1672.

Silver Bait describes itself as a "partially integrated farming operation" equipped to house, grow, and package bait worms for sale directly to retailers. R. 47, Defs.' Pretrial Br., PID 256. Silver Bait imports seven- to eight-ton truckloads of baby worms from Europe and feeds and grows them in seven concrete structures ("worm houses") Durant built on his property. R. 66, Trial Tr., PID 935; R. 67, Trial Tr., PID 1247, 1300–01; R. 82, Order, PID 1673. These worm houses are 540 feet long and fifty feet wide with an eight-foot incline from one end to the other to aid water drainage. R. 67, Trial Tr. PID 1247; R. 82, Order, PID 1673. Inside, each worm house has a ten-foot wide tractor driveway down the center, flanked by twenty-foot worm beds on either side. R. 67, Trial Tr., PID 1247; R. 82, Order, PID 1673.

Silver Bait workers take the baby worms off the trucks and deposit them directly onto the empty concrete beds. R. 66, Trial Tr., PID 955–56; R. 82, Order, PID 1673. The baby worms are then covered with a corn-based feed. R. 66, Trial Tr., PID 942; R. 82, Order, PID 1673. Durant decided to grow his own corn in fields located on Silver Bait's 750 acres to ensure the quality of the feed.[1] R. 82, Order, PID 1673. Workers send the corn silage through a grinder and combine it with a mixture of peat moss, lime, and water. R. 82, Order, PID 1673. The feed mixture is driven into the worm houses on a tractor and dropped on top of the baby worms in their beds. R. 66, Trial Tr., PID 941–42, 1014. The worms are fed about three times a week and are usually left in the beds to grow for two or more months. R. 82, Order, PID 1673. The baby worms weigh between 0.6 and 0.8 grams when they arrive, and are not fit for sale as bait until

---

[1]Durant testified that in 2010, for example, Silver Bait cultivated roughly 300 acres of corn and produced a yield of around twenty to twenty-two tons per acre. R. 67, Trial Tr., PID 1239.

they reach sexual maturity and a weight of roughly 1.3 to 1.7 grams.  R. 82, Order, PID 1673–74. During the relevant years, 2008 to 2011, Silver Bait fed and raised between fourteen and twenty-one truckloads of worms each year.  R. 67, Trial Tr., PID 1300–01.

When the worms reach the appropriate size, they are harvested.  A machine lifts the worms and their feed mixture out of the beds and sifts out some of the dirt.  R. 66, Trial Tr., PID 943–45, 1014; R. 82, Order, PID 1674.  Then another machine sorts the worms by size, and workers bring the worms to Silver Bait's packing room.  R. 66, Trial Tr., PID 997–98, 1014; R. 82, Order, PID 1674.  Silver Bait makes its own customized bait cups using an injection-molding machine, rather than purchasing typical Styrofoam or plastic cups designed for food and drink. R. 66, Trial Tr., PID 899; R. 67, Trial Tr., PID 1259.  Workers in the packing room place roughly thirty worms in each cup.  R. 66, Trial Tr., PID 1000–01.  The cups are then placed on a conveyor belt, where they are filled with dirt and fitted with lids through an automated production process.  *Id.* at PID 1001.  Workers then take the filled cups, add labels, and load pallets for pickup by a delivery service.  *Id.* at PID 1002.

Believing its employees fall within an exemption for agricultural workers, Silver Bait does not pay overtime.  R. 67, Trial Tr., PID 1271.  In April 2009, the Department of Labor's Nashville district office opened an investigation into possible violations of the FLSA's wage-and-hour laws at Silver Bait.  R. 66, Trial Tr., PID 1041.  The Nashville investigators reached a preliminary conclusion that Silver Bait does not qualify for the agricultural exemption, *id.* at PID 1046, 1049–50, but the case was transferred to the Knoxville office before the Nashville office completed its investigation.  R. 82, Order, PID 1675 n.10.  In 2010, the Knoxville office issued a final report finding Silver Bait's employees exempt.  *Id.* at PID 1675.  The report reasoned that Silver Bait is an "agricultural employer . . . because it employed seasonal workers to cultivate, grow and harvest agricultural or horticultural commodities" and its employees are "working exclusively on a farm for the farmer."  *Id.*  The Department of Labor ordered Silver Bait to pay overtime for one four-week period when the company acted as a wholesaler—importing worms and immediately reselling them to retailers—but its workers were otherwise treated as exempt. *Id.* at PID 1675–76.

**B.**

After obtaining consent forms from eleven other workers, Barks and Hoffman filed this action against Silver Bait and Durant under the FLSA provision permitting one or more employees to bring a private action "in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). R. 1, Complaint, PID 22–32. After the submission of consent forms from additional opt-in plaintiffs, the parties stipulated to a list of nineteen former employees (Plaintiffs, collectively) who would be owed unpaid overtime if Silver Bait and Durant (Silver Bait, collectively) were found to have willfully violated the FLSA. R. 21–23, 25–26, 28, Consent Forms; R. 53, Stipulation, PID 270–72.

The district court conducted a two-day bench trial. R. 82, Order, PID 1672. Because the parties stipulated to the amount of unpaid overtime at issue, their arguments focused on the applicability of the agricultural exemption. Plaintiffs contended that growing and raising worms—often called "worm farming" at trial—does not fall within the plain terms of the FLSA exemption. *See, e.g.*, R. 67, Trial Tr., PID 1324. Silver Bait argued worm farming is agriculture under a common-sense reading of the statute. *See, e.g.*, R. 67, Trial Tr., PID 1320–21. The district court agreed with Silver Bait and entered a declaratory judgment in its favor. R. 82, Order, PID 1684. Plaintiffs now appeal.

**II.**

We review de novo the determination whether an employee is exempt from the FLSA's overtime provisions. *Ale v. Tenn. Valley Auth.*, 269 F.3d 680, 691 (6th Cir. 2001). The district court found that Silver Bait's employees are exempt because growing and raising worms is agriculture. We agree.

**A.**

The FLSA requires employers to pay covered workers overtime for time worked in excess of forty hours, but there are exemptions for enumerated occupations and industries. 29 U.S.C. §§ 207, 213. These exemptions are "narrowly construed against the employers seeking to assert them," *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945); *accord Martin v. Ind. Mich. Power Co.*, 381 F.3d 574, 578 (6th Cir. 2004), and their "enlargement by

implication" is precluded by the statute's detail and particularity, *Citicorp Indus. Credit, Inc. v. Brock*, 438 U.S. 27, 35 (1987) (quoting *Addison v. Holly Hill Fruit Prods., Inc.*, 322 U.S. 607, 616–17 (1944)) (internal quotation marks omitted).  Only an employee who is "plainly and unmistakably within [an exemption's] terms and spirit" will be held exempt.  *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960); *accord Chao v. Double JJ Resort Ranch*, 375 F.3d 393, 396 (6th Cir. 2004).

Among the exempt are "employee[s] employed in agriculture."  29 U.S.C. § 213(b)(12).  This exemption "embrace[s] the whole field of agriculture."  *Maneja v. Waialua Agric. Co.*, 349 U.S. 254, 259 (1955); *see also Addison*, 322 U.S. at 612 (describing the exemption as "far-reaching"); *Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1025–26 (5th Cir. 1993) (discussing the "broad reach" intended by Congress).  Yet "no matter how broad" its coverage, the exemption must "apply only to agriculture," and courts are "left with the problem of what is and what is not properly included within that term."  *Maneja*, 349 U.S. at 259.

The FLSA provides:

> "Agriculture" includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 1141j(g) of Title 12), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f).[2]  The Supreme Court has explained that, unlike exemptions, general definitions found in § 203 are not subject to the "narrow-construction principle."  Thus, we will not extend the exemption beyond the meaning of agriculture, but the terms of its definition are properly construed to reach the whole field of agriculture.  *See Sandifer v. U.S. Steel Corp.*,

---

[2]The cross-referenced statutory provision, 12 U.S.C. § 1141j(g), was redesignated as subsection (f) on May 22, 2008.  *See* Food, Conservation, and Energy Act, Pub. L. No. 110-234, 122 Stat. 923 (2008).  Subsection (f) defines the term agricultural commodity to include, "in addition to other agricultural commodities, crude gum (oleoresin) from a living tree, and the following products as processed by the original producer of the crude gum (oleoresin) from which derived: Gum spirits of turpentine and gum rosin."  12 U.S.C. § 1141j(f); *see also* 29 C.F.R. § 780.116 (explaining the cross-reference).

134 S. Ct. 870, 879 n.7 (2014); *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2172 n.21 (2012).

Agriculture is divided into two distinct categories. *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762–63 (1949); *see also* 29 C.F.R. § 780.105(a). First, agriculture is defined to mean "farming in all its branches," and the statute provides an illustrative list of farming activities. 29 U.S.C. § 213(b)(12); *see also* 29 C.F.R. § 780.105(b). This list is not exhaustive; the examples are "among other things" included in the phrase "farming in all its branches." *Id.* The cases describe this category as "primary" agriculture. *Bayside Enters., Inc. v. NLRB*, 429 U.S. 298, 300 & n.7 (1977). Second, agriculture is defined to include non-farming activities that are closely related to farming. 29 U.S.C. § 213(b)(12); *see also* 29 C.F.R. § 780.105(c). This "broader meaning" of the term reaches "any practices . . . that are performed either by a farmer or on a farm, incidently [*sic*] to or in conjunction with 'such' farming operations." *Farmers Reservoir & Irrigation*, 337 U.S. at 763. The cases describe this category as "secondary" agriculture. *Bayside Enters.*, 429 U.S. at 300 & n.7. By the express terms of the definition, the two categories are related. Without primary agriculture, there can be no secondary agriculture.

The Department of Labor has offered interpretive guidance in 29 C.F.R. pt. 780. Courts must "accept an agency's reasonable resolution of an ambiguity in a statute that the agency administers," *Michigan v. EPA*, 135 S. Ct. 2699, 2707 (2015), but only where the agency has "received congressional authority to determine the particular matter at issue in the particular manner adopted," *City of Arlington v. FCC*, 133 S. Ct. 1863, 1874 (2013). Here, the Department's views were published in interpretive bulletins authored by the Administrator of the Wage and Hour Division, who expressly declined to exercise the Department's rulemaking authority. 37 Fed. Reg. 12,084, 12,119 (June 17, 1972); *see also U.S. Dep't of Labor v. N.C. Growers Ass'n*, 377 F.3d 345, 352 (4th Cir. 2004); 29 C.F.R. § 780.5. Thus, we consider the Department's views only according to their power to persuade, mindful of the Department's expertise and thorough consideration of the issue. *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *Atrium Med. Ctr. v. U.S. Dep't of Health & Human Servs.*, 766 F.3d 560, 573 & n.2 (6th Cir. 2014).

**B.**

The district court determined that Silver Bait is engaged in the business of growing and raising worms, and Plaintiffs do not contest this finding. R. 82, Order, PID 1676; Barks Br. 2. The district court further determined that growing and raising worms is agriculture under the farming meaning of the term, not the secondary meaning of the term. R. 82, Order, PID 1683–84. Not every employee who works at a farming operation is an exempt agricultural worker, but Plaintiffs apparently concede they would be covered by the exemption if Silver Bait's business is held to be a farming operation.[3] *See* Barks Br. 2. Thus, we do not address the circumstances and activities of each individual employee, and we confine our review to the interpretation of "agriculture" and the definitional phrase "farming in all its branches."

**1.**

We begin with the ordinary meaning of those terms. "Agriculture" is an expansive concept, and "farming" is only marginally more precise. Dictionaries provide useful insight into their common usage. *See, e.g., Kellogg Brown & Root Servs., Inc. v. United States*, 135 S. Ct. 1970, 1976 (2015); *Yates v. United States*, 135 S. Ct. 1074, 1081–82 (2015). Webster's Third New International Dictionary describes "agriculture" as, among other things, "the science or art of cultivating the soil, harvesting crops, and raising livestock" and "the science or art of the production of plants and animals useful to man and in varying degrees the preparation of these products for man's use and their disposal." Webster's Third New International Dictionary 44 (1986). To "farm" is "to devote (land) to agriculture," "to manage and cultivate (land) as a farm," or "to engage in the business of raising crops or livestock." *Id.* at 824. Black's Law Dictionary defines "agriculture" as "[t]he science or art of cultivating soil, harvesting crops, and raising livestock," and the verb "farm" as "[t]o cultivate land [or] conduct the business of farming." Black's Law Dictionary 83, 723 (10th ed. 2014). These definitions are instructive but not conclusive. *See Yates*, 135 S. Ct. at 1082 ("Ordinarily, a word's usage accords with its

---

[3]The district court did not evaluate Plaintiffs' activities individually. *See* R. 82, Order, PID 1676–84. After addressing the growing and raising of worms, the district court found that "all other activities carried on at Silver Bait are characteristic of, and indistinguishable from, that carried on at a traditional 'farm.'" *Id.* Plaintiffs do not challenge that Silver Bait employees who are engaged in non-farming activities, like construction and packing, would be engaged in exempt secondary agriculture if the primary activity of worm farming is agricultural.

dictionary definition. In law as in life, however, the same words, placed in different contexts, sometimes mean different things."). They do, however, suggest that raising worms is not a traditional subject of agriculture but still falls within the margins of the term's ordinary meaning as involving the production of animals useful to man and the preparation of products for man's use. *See* Webster's Third New International Dictionary, at 44.

**2.**

Our understanding of "farming in all its branches" is further informed by the illustrative list of examples provided in the FLSA. 29 U.S.C. § 203(f). Clearly, if raising worms falls within a listed example, the agricultural exemption applies. But even if not, the examples suggest the types of activities Congress intended to capture within the broadly phrased definition and are not exclusive. 29 C.F.R. § 780.108. Two of the four examples are not relevant. Raising worms plainly is not "the cultivation and tillage of the soil," *see Donovan v. Frezzo Bros., Inc.*, 678 F.2d 1166, 1169–70 (3d Cir. 1982) (discussing soil); 29 C.F.R. § 780.110, or "dairying," *see NLRB v. Karl's Farm Dairy, Inc.*, 570 F.2d 903, 905–06 (10th Cir. 1978) (discussing dairying); 29 C.F.R. § 780.111.

The third FLSA example is the broadest, covering "the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities." 29 U.S.C. § 203(f). This example brings the analysis full circle. Agriculture is defined as farming, which in turn is defined to include agricultural commodities. The Department adds that "agricultural or horticultural" refers to commodities resulting from "the application of agricultural and horticultural techniques." 29 C.F.R. § 780.112. The Department lists "[g]rains, forage crops, fruits, vegetables, nuts, sugar crops, fiber crops, tobacco, and nursery products" as examples of products of the soil, and "milk, wool, eggs, and honey" as qualifying products of domesticated animals. *Id.* The Department excludes commodities produced by "the gathering or harvesting of wild commodities such as mosses, wild rice, burls and laurel plants, the trapping of wild animals, or the appropriation of minerals and other uncultivated products from the soil." 29 C.F.R. § 780.114. Courts have added pine straw and Christmas trees to the list of agricultural commodities, but not peat. *N.C. Growers*, 377 F.3d at 352 (holding Christmas trees are a horticultural commodity); *Morante-Navarro v. T&Y Pine Straw, Inc.*, 350 F.3d 1163, 1170

(11th Cir. 2003) (interpreting Department bulletins to hold that pine straw is an agricultural commodity); *Wirtz v. Ti Ti Peat Humus Co.*, 373 F.2d 209, 213 (4th Cir. 1967) (holding peat is not an agricultural commodity). The list of included and excluded commodities is instructive in that worms are more like the included cultivated commodities than excluded wild ones, but the determination whether worms are a covered commodity by definition hinges on our resolution of the ultimate dispute over the categorization of worms as either agricultural or not.

Lastly, the fourth example addresses employees "raising livestock, bees, fur-bearing animals, or poultry." This list features members of the animal kingdom, a classification shared by worms. But worms are neither furred nor fowl, and bees are in a different phylum. Worms are also a poor fit for livestock, a term used to describe traditional farm animals. *See, e.g.*, *Baldwin v. Iowa Select Farms, L.P.*, 6 F. Supp. 2d 831, 836 (N.D. Iowa 1998) (hogs are livestock); *Martinez v. Deaf Smith Cty. Grain Processors, Inc.*, 583 F. Supp. 1200, 1204 (N.D. Tex. 1984) (cattle are livestock). The Department views livestock as essentially a mammalian category, including "[c]attle (both dairy and beef cattle), sheep, swine, horses, mules, donkeys, and goats" but not "albino and other rats, mice, guinea pigs, and hamsters." 29 C.F.R. § 780.120. Nor is fish livestock. *Hedrick v. S. States Coop., Inc.*, No. 4:10-CV-12-JG, 2010 WL 3834631, at *5 (E.D.N.C. Sept. 30, 2010); 29 C.F.R. § 780.120. Thus, raising worms is not expressly exempt within the meaning of any of the statutory examples.

**3.**

Against this backdrop, we return to the concept of farming and the question whether the raising and growing of worms is an unlisted farming activity. We are guided by the ordinary meaning of the term, the statutory context, and Congress's embrace of the entire field of farming within the meaning of agriculture. The Department makes clear that "[t]he language 'farming in all its branches' includes all activities, whether listed in the definition or not, which constitute farming or a branch thereof under the facts and circumstances," 29 C.F.R. § 780.107, and suggests, under the heading "Determination whether unlisted activities are 'farming,'" that "it may be necessary to consider various circumstances such as the nature and purpose of the employer, the character of the place where the employee performs his duties, the general types of activities there conducted, and the purpose and function of such activities," 29 C.F.R. § 780.109.

The raising and growing of bait worms—at least as practiced by Silver Bait—shares much in common with traditional farming. First, Silver Bait's business has the same basic purpose as many traditional farms. Like the hog farmer or cattle rancher, Silver Bait raises animals for sale as a commodity. Without doubt, worms are not a traditional farm animal as that term is commonly understood; but the meaning of farming is not frozen in time, *see* 29 C.F.R. § 780.8; *id.* at § 780.104, and there is nothing in the statute to suggest that the exemption should be circumscribed by tradition. To the contrary, the FLSA expressly lists forms of traditional farming but still provides for the exemption of unlisted activities. 29 U.S.C. § 203(f). Further, the Supreme Court has endorsed an evolving view of agriculture, albeit in the context of methodology rather than the object of the agricultural endeavor. *Maneja*, 349 U.S. at 724 ("There is no reason to construe the FLSA so as to discourage modernization . . . ."); *Farmers Reservoir & Irrigation*, 337 U.S. at 760–61 (discussing "[e]conomic progress"). The term is flexible enough to accommodate the cultivation of crops and farming of animals that Congress may not have contemplated when the legislation was enacted.

The worms' intended use as bait also does not deprive them of their agricultural character. Although many agricultural products are consumed as food, plants and animals are not always cultivated for this purpose. *See, e.g.*, 29 U.S.C. § 203(f) (listing "fur-bearing animals" and "horticultural commodities" as farming products); *Marshall v. Thiele*, No. 76-38, 1978 WL 1759, at *3–4 (M.D. Pa. Nov. 7, 1978) (holding the agricultural exemption applies to the raising of race horses); 29 C.F.R. § 780.106 ("[W]here an employer owns a factory and a farm and operates the farm only for experimental purposes in connection with the factory, those employees . . . are considered as employed in agriculture."); *id.* § 780.119 ("[T]he fact that cattle are raised to obtain serum or virus . . . does not affect the status of the operations . . . ."). Although the production of bait is not a traditional objective of agriculture, there is little to distinguish this purpose from the disposition of other farming products in the market.

Plaintiffs argue for a more rigid view of the types of animals that may be covered by the exemption. Barks Br. 15–16. Although they concede that the list of examples provided in the statute is not exhaustive, Plaintiffs read the Department's interpretive bulletins to exclude unlisted animals. *Id.* at 16. The Department does not go so far. Rather, it makes clear that

farming includes "all activities which constitute farming or a branch thereof under the facts and circumstances," whether listed or not. 29 C.F.R. § 780.107. Plaintiffs rely on 29 C.F.R. § 780.119, which provides, under the heading "Employment in the specified operations generally": "Employees are employed in the raising of livestock, bees, fur-bearing animals or poultry only if their operations relate to animals of the type named." 29 C.F.R. § 780.119. But this bulletin does not exclude unlisted animals from the statutory category of agriculture. Rather, it addresses specifically the meaning of livestock, bees, fur-bearing animals, and poultry.[4]

Plaintiffs also emphasize that fish farming is separately exempted under 29 U.S.C. § 213(a)(5). Barks Br. 13–14. However, 29 C.F.R. § 780.109 states that fish farming "fall[s] within the scope of the meaning of 'farming in all its branches,'" in addition to the separate exemption, and courts have found that raising fish is an agricultural activity. *E.g.*, *Hedrick*, 2010 WL 3834631, at *4–5 (finding that fish farm employee who "engaged in growing and harvesting living creatures for food consumption" was exempt); *Tullous v. Tex. Aquaculture Processing Co.*, 579 F. Supp. 2d 811, 819 (S.D. Tex. 2008) (assuming that raising catfish is agriculture); *see also Hodgson v. Idaho Trout Processors Co.*, 497 F.2d 58 (9th Cir. 1974) (holding that employees engaged in trout processing are not agricultural workers because they "neither cultivate nor raise anything"). The National Labor Relations Board came to the same conclusion. *Domsea Farms, Inc.*, 211 N.L.R.B. 832, 833 (1974) (finding that salmon farming is agriculture). Like worms, fish are not traditional farm animals, but they are raised and harvested like an agricultural commodity.

Silver Bait's operations also resemble a traditional farm. Plaintiffs correctly note that the cultivation of corn on the property should not influence the determination whether raising worms is agricultural, Barks Br. 17–19, because each activity must be evaluated independently under the plain terms of the statute. 29 U.S.C. § 209(f) (providing for separate analysis of activities on farms); *Bayside Enters.*, 429 U.S. at 301 ("An employer's business may include both agricultural

---

[4]Plaintiffs also rely on 29 C.F.R. § 780.120, which further explains that "livestock" includes "only domestic animals ordinarily raised or used on farms" and excludes "albino and other rats, mice, guinea pigs, and hamsters." The bulletin cites to *Mitchell v. Maxfield*, No. 3080, 1956 BL 83 (S.D. Ohio Feb. 17, 1956), which held that "the raising of mice, rats, and guinea pigs" is not agriculture because it "does not constitute the raising of livestock or fur-bearing animals within the meaning of Section 3(f) of the Act." *Mitchell* appears to treat the statutory examples as an exhaustive list. *See id.* at *2. To the extent *Mitchell* suggests without analysis that unlisted animals can never be agricultural, we find it unpersuasive.

and nonagricultural activities."). But Silver Bait's worm-raising operations would be considered farming even if it purchased its feed. Silver Bait houses the worms, feeds them, monitors their growth, and eventually harvests them. *Cf. N.C. Growers*, 377 F.3d at 352 (holding that "extensive care and management" of Christmas trees makes them "cultivated commodities"); *Morante-Navarro*, 350 F.3d at 1170 (holding that cultivation distinguishes farming from harvesting wild commodities); 29 C.F.R. § 780.112. Although the use of sorting machines and concrete worm beds evoke comparisons to industrial production, modern farming of livestock and poultry similarly has many industrial qualities. *See, e.g.*, *Wirtz v. Tyson's Poultry, Inc.*, 355 F.2d 255, 261 (8th Cir. 1966) (holding that processing eggs is farming); *Iowa Select Farms*, 6 F. Supp. 2d at 841–43 (holding that industrial hog production is farming).

Thus, although not a specifically enumerated farming activity, there is little to distinguish Silver Bait from a traditional farm other than the unfamiliarity of worm farming. We agree with the Department and the district court that the growing and raising of worms is a form of farming within the FLSA's agricultural exemption.

### III.

Because the agricultural exemption covers the growing and raising of bait worms, we **AFFIRM** the judgment of the district court.