*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0220P (6th Cir.)
File Name: 04a0220p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

ELAINE L. CHAO, Secretary of
Labor,

     *Plaintiff-Appellant,*

     *v.*

DOUBLE JJ RESORT RANCH, et
al.,

     *Defendants-Appellees.*

No. 02-2068

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 01-00141—Robert Holmes Bell, Chief District Judge.

Argued: March 10, 2004

Decided and Filed: July 9, 2004

Before: MARTIN and CLAY, Circuit Judges; MILLS,
District Judge.*

_____

* The Honorable Richard Mills, United States District Judge for the
Central District of Illinois, sitting by designation.

_____

## COUNSEL

**ARGUED:** Mary J. Rieser, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Appellant. Donald A. Van Suilichem, VAN SUILICHEM & ASSOCIATES, Bloomfield Hills, Michigan, for Appellees. **ON BRIEF:** Mary J. Rieser, Paul Frieden, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Appellant. Donald A. Van Suilichem, VAN SUILICHEM & ASSOCIATES, Bloomfield Hills, Michigan, for Appellees.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. Secretary of Labor, Elaine Chao, asks us to overturn the district court's grant of summary judgment to Double JJ Resort Ranch, Inc., et al. She also asks us to reverse the district court's denial of her motion for summary judgment. She argues that the district court erred when it found Double JJ to be exempt from the minimum-wage and overtime-pay guarantees of the Fair Labor Standards Act, 29 U.S.C. §§ 206(a), 207(a). We agree in part and REVERSE.

I.

Defendants are a group of corporations doing business as Double JJ Resort. Double JJ is a large western-themed resort near Rothbury, Michigan. The resort includes a variety of lodging and dining facilities, a conference center (for up to 250 people), bars, a general store, a gift shop, a gas station, a barbershop, campsites, swimming pools, three lakes, and facilities related to horseback riding. While at Double JJ, resort guests can go canoeing, attend camp fires, shoot archery, play shuffleboard, climb walls (for fun and in

designated areas), fish, go on hay rides, pet farm animals, or ride water slides, among other things. There is also a golf course on site, but both parties agree that it is a separate establishment and is not part of this suit. Guests may purchase a "package deal," or they may purchase their food, lodging, and recreational activities separately. The great bulk of Double JJ's revenue comes from the sale of food, drink, and lodging, not from the sale of recreational activities.

Double JJ employs from 300 to 350 employees during the peak season and about 50 employees in the off-season. Double JJ earns the bulk of its revenue during the peak season, serving up to 300 overnight guests each night and an additional 100 daytime visitors. Double JJ pays both hourly wages and salaries, depending on the employee, but no employee is paid overtime, and some employees are paid less than the minimum wage.

Secretary Chao brought this enforcement action under section 17 of the Fair Labor Standards Act of 1938, 29 U.S. C. § 201 et seq., in the United States District Court for the Western District of Michigan. She sought to enjoin Double JJ from violating the minimum-wage, overtime, and record-keeping requirements of the Act.

The Secretary alleged that the since April 4, 1998, and in violation of 29 U.S.C. § 215, Double JJ: failed to pay covered employees at least minimum wage as required by 29 U.S.C. § 206(a); failed to pay covered employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in a workweek in excess of the first forty, as required by 29 U.S.C. § 207(a)(1); and failed to keep records of employee wages, hours, and conditions of employment as required by 29 U.S.C. § 211(c). Double JJ responded, claiming that it had not violated the Act, because it was exempt from the requirements as an "amusement or recreational facility."

Section 13(a)(3) of the Act provides that the minimum-wage requirements, 29 U.S.C. § 206, and the overtime-pay requirements, 29 U.S.C. § 207, are not applicable with respect to:

any employee employed by an establishment which is an amusement or recreational establishment, organized camp, or religious or non-profit educational center, if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 per centum of its average receipts for the other six months of such year, except that the exemption from sections 206 and 207 of this title provided by this paragraph does not apply with any respect to any employee of a private entity engaged in providing services or facilities (other than, in the case of the exemption from section 206 of this title, a private entity engaged in providing services and facilities directly related to skiing) in a national park or a national forest, or on land in the National Wildlife Refuge System, under a contract with the Secretary of the Interior or the Secretary of the Agriculture[.]

Both parties filed for partial summary judgment. The district court granted the defendants' motion and dismissed the case. The court explained:

[w]hile a majority of the Double JJ's revenue is from food and lodging, only a few guests visit the Double JJ either for food or lodging. Guests' principal reason for visiting the Double JJ is to participate in recreational activities, and food and lodging are secondary to the principle purpose of enjoying recreational activities. Hence, the Court finds that on the specific facts of this case, Defendant's principal activity is recreational.

Secretary Chao filed this appeal.

## II.

"Whether employees are within an exemption from the provisions of the [Fair Labor Standards] Act is primarily a question of fact. The District Court's finding of fact cannot be set aside unless they are clearly erroneous." *Brennan v. Southern Prods., Inc.*, 513 F.2d 740, 744 (6th Cir. 1975). However, where, as here, the facts are not in dispute, but the parties contest the legal application of those facts, we review the district court's grant of summary judgment de novo. *Paul Revere Life Ins. Co. v. Brock*, 28 F.3d 551, 553 (6th Cir. 1994); *see also United States v. Brown*, 915 F.2d 219, 223 (6th Cir. 1990) (holding a district court's statutory interpretations will be reviewed de novo).

It is well settled law in our Circuit that an employer who claims to be exempt from the requirements of the Fair Labor Standards Act has the burden of proving it qualifies under the terms of a specific exemption. *Homemakers Home & Health Care Servs., Inc. v. Carden*, 538 F.2d 98, 101 (6th Cir. 1976). "[The Act] was designed to eliminate labor conditions detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency, and general well-being of workers." *Brock v. Louvers and Dampers, Inc.*, 817 F.2d 1255, 1256 (6th Cir. 1987). "[W]ithin the terms of the coverage fashioned by Congress, the Act has been construed liberally to apply to the furthest reaches consistent with congressional discretion." *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959). Thus, "exemptions from the Act are to be narrowly construed against the party asserting them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Homemakers*, 538 F.2d at 101 (internal citations omitted).

## III.

Secretary Chao makes one argument on appeal. Conceding that Double JJ meets the "seasonal" requirement of the section

213(a)(3) test, the Secretary argues that the district court erred in its determination that Double JJ was the type of establishment that Congress intended to exempt. We agree.

This case centers on the legal definition of the phrase "amusement and recreational establishment" as it is used in 29 U.S.C. § 213(a)(3). "When interpreting a statute, this Court must begin with its plain language, and may resort to a review of congressional intent or legislative history only when the language of the statute is not clear." *Herman v. Fabri-Centers of Am., Inc.*, 308 F.3d 580, 585 (6th Cir. 2002).

Double JJ argues that we need go no further than the statute's plain language to affirm the district court. In essence, Double JJ claims that there is a common sense definition of "recreational establishment" – which apparently is being in the "fun business" – and that it clearly qualifies. While we applaud Double JJ's appeal to common sense, its argument followed to its logical end would allow the exemption to become the rule. *See e.g., Dole v. Mr. W. Fireworks, Inc.*, 889 F.2d 543, 546 (5th Cir. 1989) ("permitting every seaside merchant to claim the exemption would result in the exemption swallowing the rule"). Arguably, any ice-cream stand or restaurant could qualify under Double JJ's proposed interpretation. A boat seller could claim that it was derivatively a "recreational establishment," given that its sales enable the fun of sailing. It would certainly not be a laughable claim under Double JJ's definition that the boat seller is in the "recreation business." Most businesses sell something -- a thing, a service, a right to occupy -- and any number of arguments could be marshaled to connect the remote sale to something fun. Thus, unlike Double JJ, we do not believe we can end our analysis with a plain-language interpretation of section 213(a). "Recreational establishment" is an ambiguous phrase. Congress clearly meant for there to be a limitation to the exemption, and the words used in the statute do not plainly convey where that boundary lies.

The Secretary turns our attention to both the legislative history of the Act and the opinions of the Labor Department's Wage and Hour Administrator to support her argument that Double JJ is not exempt. "Because [the Department of Labor's] Wage and Hour Administrator is the primary federal authority entrusted with determining the [Act's] scope, these interpretations while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which the courts and litigants may properly resort to for guidance." *Reich v. Miss Paula's Day Care Ctr., Inc.*, 37 F.3d 1191, 1194 (6th Cir. 1191) (citations omitted). We treat legislative histories similarly. *See, e.g., Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003).

The amusement and recreational establishment exemption was originally enacted in 1961. The Senate Committee Report describing the enactment of the exemption reads:

(c) Amusement and recreational establishments operating on a seasonal basis. – A similar exemption without regard to the annual sales volume of the enterprise, is provided for employees of amusement and recreational establishments operating on a seasonal basis. These establishments are typically those operated by concessionaires at amusement parks and beaches for 6 months or less than a year.

S. Rep. No. 145, 87th Cong., 1st Sess., *reprinted in* 1961 U.S. Code Cong. & Admin. News at 1620, 1647-48; *see also Louvers*, 817 F.2d at 1257.

Reasoning by analogy, we are comfortable with the idea that Double JJ is not the type of establishment that Congress intended to exempt. Selling treats at Disneyland is a far cry from renting hotel rooms at the Disney Hotel. Riding a roller-coaster ride is different than buying dinner and renting a room. One is recreational and the other is a necessity of life.

We need not stop with the congressional report, however. Our conclusion finds support in a 1979 opinion letter from the Wage and Hour Administrator, which makes clear that:

hotels, motels and eating places do not have an amusement or recreational character. Nor do . . . gas stations. . . . The fact that these stores are heavily patronized by tourists does not make them recreational or amusement establishments any more than restaurants, retail stores, and similar establishments at a seaside resort would be considered exempt.

1979 WL 62129. Further, a 1994 Wage and Hour Administrator opinion, dealing with a dude ranch, explains:

[w]hile it appears that your client's operations meet the criteria in section 13(a)(3)(B), it is our opinion that your client's dude ranch is not an "amusement or recreational establishment" within the section of 13(a)(B) of the [Fair Labor Standards Act]. It is our opinion that the ranch falls within the category of a resort hotel.

1994 WL 1004822. Combing this persuasive authority, we do not believe that Congress intended to exempt establishments like Double JJ.

To clarify, unlike the district court below, we do not think that Double JJ's principal activity is selling recreational activities. Instead, Double JJ is a "resort hotel." It offers recreational activities not because selling recreational activities is its primary end, but as a way to get to people to come to a rather remote spot in Michigan to buy food, to rent beds, and to have meetings. The Secretary asks that we adopt an "income test" to guide our analysis, but we do not think it necessary to do so in this case. The legislative history, the Wage and Hour Administrator's opinions, and common sense compel our finding that Double JJ is not in the recreation

business.[1] Its primary purpose is to sell foods and rent beds; the recreational activities are just a carrot enticing people to make the trip.

## IV.

Our analysis thus far has considered Double JJ to be one establishment. As we noted above, Double JJ does not contest that it has failed to pay its employees the prevailing minimum wage and required overtime pay. Nor does Double JJ contest that it has failed to keep adequate records as required by the Act. Instead, it argues that it was exempt from the Act's requirements. Having rejected the idea that Double JJ is wholly exempt from the Act's provisions, we are nonetheless uncomfortable remanding with instructions to enter judgment for Secretary Chao. While we are certain that parts of Double JJ are bound by the Act's pay and records requirements (for example, the bars, restaurants, dining facilities, conference center, lodging facilities, and gas station), we cannot, on this record, declare that Double JJ is one establishment and thus wholly subject to the Act. The Secretary concedes that Double JJ's golf course qualifies as a separate establishment that is exempt from the Act, and so too may other recreational services offered by Double JJ.

The First Circuit, in a case involving the definition of "establishment" as used in the amusement and recreational establishment exemption, held that:

[s]eparate stores under common ownership may each be establishments while other aspects of the total operations of the same company may be found to be outside the pertinent establishment. *See Mitchell v. Bekins Van & Storage Co.*, 352 U.S. 1027 (1957), *summarily rev'g* 231

---

[1] Were Double JJ situated in a National Park or National Forest our analysis would be different. *See* 29 U.S.C. § 213(a)(3); *see also Chessin v. Keystone Resort Mgmt, Inc.*, 184 F.3d 1188 (10th Cir. 1999).

F.2d 25 (9th Cir. 1956). Conversely, different ownership does not prevent closely integrated departments from being treated as a single establishment, *e.g.* separately owned departments in a department store may belong to one establishment.

*Marshall v. New Hampshire Jockey Club, Inc.*, 562 F.2d 1323, 1330 (1st Cir. 1977). Similarly the language defining "establishment" in the regulations accompanying the Act, albeit not the regulations defining the recreational exemption, set out that "two or more physically separated portions of a business although located on the same premises and even under the same roof in some circumstances may constitute more than one establishment for purposes of exemptions." 29 C.F.R. § 779.305. Under this authority, Double JJ's facilities related to horseback riding, for example, might qualify as a separate recreational establishment. Then again, it might not. We simply cannot tell from this record.

On remand, we believe the test the district court should use in determining which parts of Double JJ qualifies for the exemption is set out in 29 C.F.R. § 779.305. *See also* 1999 WL 1788159 (the opinion of the Wage and Hour Administrator incorporating the regulation's test). The regulation explains that for a recreational service, remotely connected to a non-qualifying business, to qualify as a separate establishment it must be: (a) physically separate from the other activities; (b) functionally operated as a separate unit having separate records and separate bookkeeping; and (c) have dedicated employees that are not shared between units. 29 C.F.R. § 779.305. If any of Double JJ's recreational services meet this test, they should be exempt from the Act's requirements.

Accordingly, we REVERSE the judgment of the district court and remand for proceedings consistent with this opinion.