15-2109-cv
*Hill v. Delaware North Companies Sportservice, Inc.*

## In the
## United States Court of Appeals
## For the Second Circuit

————

August Term, 2015

No. 15-2109-cv

WILLIAM A. HILL and TANICA BROWN,
individually and on behalf of all others similarly situated,
*Plaintiffs-Appellants*,

*v.*

DELAWARE NORTH COMPANIES SPORTSERVICE, INC.,
*Defendant-Appellee*,

BALTIMORE ORIOLES LIMITED PARTNERSHIP,
*Intervenor.*

————

Appeal from the United States District Court
for the Western District of New York.
No. 11-cv-753 (WMS) (JJM) — William M. Skretny, *Judge.*

————

Argued: April 4, 2016
Decided: October 3, 2016

————

Before: POOLER, PARKER, and LIVINGSTON, *Circuit Judges.*

————

Plaintiffs-Appellants William A. Hill and Tanica Brown appeal from a judgment of the United States District Court for the Western District of New York (William M. Skretny, *Judge*). The district court granted summary judgment to Defendant-Appellee Delaware North Companies Sportservice, Inc., whose subsidiary owns the concessions at Oriole Park at Camden Yards, as to Hill and Brown's claims for overtime compensation under the Fair Labor Standards Act, on the ground that Appellee is an "amusement or recreational establishment" exempt from the overtime requirement. We hold that an establishment that operates on the premises of an amusement or recreational host, selling goods or services to the host's customers for their consumption or use as they engage in the host's amusement or recreational activities, is a "concessionaire" with an "amusement or recreational" character. We determine that Appellee's subsidiary is such a "concessionaire" and also that its receipts reflect that its business is seasonal, so that it qualifies for the overtime exemption. Accordingly, we AFFIRM the judgment of the district court.

————

GARY LYNCH, Carlson Lynch Sweet & Kilpela, LLP, Pittsburgh, PA (Jamisen A. Etzel, Carlson Lynch Sweet & Kilpela, LLP, Pittsburgh, PA, Edward David Hoskins, Law Offices of E. David Hoskins, LLC, *on the brief*) *for Plaintiffs-Appellants*.

ROBERT PRITCHARD (Brian M. Hentosz, *on the brief)*, Littler Mendelson, P.C., Pittsburgh, PA, Terrence M. Connors, Connors LLP, Buffalo, NY, *for Defendant-Appellee*.

Marie Celeste Bruce, Rifkin Livingston Levitan & Silver LLC, Bethesda, MD, James R. Grasso, Phillips Lytle LLP, Buffalo, NY, *for Intervenor*.

————

BARRINGTON D. PARKER, *Circuit Judge*:

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.,* strives to combat "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." *Id.* § 202. To that end it requires most employers to pay an overtime premium of one and one-half times the regular rate of pay for those hours that an employee works in excess of the standard forty-hour work week. *Id.* § 207(a)(1). However, any "amusement or recreational establishment" is exempt from paying overtime if its operations or receipts show that its business is seasonal. *Id.* § 213(a)(3). Plaintiffs-Appellants William A. Hill and Tanica Brown, who worked at the concessions at Oriole Park, the home field of the Baltimore Orioles, seek overtime compensation, which Defendant-Appellee Delaware North Companies Sportservice Inc. ("DNC Sportservice"), the owner of these concessions, chose not to pay on the basis of this exemption. The United States District Court for the Western District of New York (William N. Skretny, *Judge*), granted summary judgment in favor of DNC Sportservice, reasoning that it was exempt.

This appeal calls on us to decide whether a concessions operator at a place of amusement or recreation qualifies in its own right as "amusement or recreational," even though it does not directly provide the amusement or the recreation. We determine that it does qualify. Though FLSA does not define "amusement or recreational," the legislative history and an interpretative rule from the Department of Labor ("DOL") indicate that "concessionaires" at amusement or recreational establishments are themselves typical examples of such establishments. Using the common understanding and definition of "concessionaire," we hold that an establishment at an amusement or recreational host that sells goods or services to the

host's customer's for their consumption or use during the host's amusement or recreational activities is a concessionaire that qualifies as an "amusement or recreational establishment" under FLSA.

To qualify for the exemption, DNC Sportservice must also have satisfied at least one of the two tests for seasonality. Under "Test A," the seasonal operations test, it must "not operate for more than seven months in any calendar year." 29 U.S.C. § 213(a)(3). Under "Test B," the receipts test, it must be the case that, "during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 per centum of its average receipts for the other six months of such year." *Id.* We conclude that DNC Sportservice satisfied the receipts test during the relevant period and do not rely on the operations test. For all these reasons, we affirm the judgment of the district court.

## BACKGROUND

The relevant facts are undisputed. In November 2010, Maryland Sportservice, Inc., a wholly-owned subsidiary of DNC Sportservice, entered into a concession agreement with the Baltimore Orioles Limited Partnership, which has intervened in this case. This agreement grants Maryland Sportservice the right to operate the food, beverage and merchandise sales concessions at Oriole Park. Oriole Park consists of two structures: the baseball stadium itself and part of an old Baltimore & Ohio Railroad warehouse, separated by a pedestrian promenade known as Eutaw Street.

Maryland Sportservice operates entirely within Oriole Park. On game days Maryland Sportservice operates on every level dozens of stands (which are hard stands with three cinderblock walls and a roll-up shutter, where customers walk up to the stand to make their purchase) throughout the ballpark, selling food and beverages, or souvenirs and merchandise. Television monitors in

the concourses show the baseball game live so that baseball fans need not miss any of the action on the field when purchasing concessions at a stand. Maryland Sportservice also operates numerous portable concession carts throughout the ballpark, and its vendors walk through the seating areas of the ballpark, selling food and beverages. These services are available only in connection with home baseball games being played at Oriole Park, and only to ticket holders who are at Oriole Park to watch a Major League Baseball game.

Other parts of Maryland Sportservice's operations at Oriole Park occur on non-game days. It operates a number of clubs and lounges in the ballpark, which on game days are available only to ticket holders but are also available for rental on other days with food that it caters. In addition, it operates the Orioles Team Store, which sells Orioles apparel and team souvenirs, and Dempsey's Brew Pub and Restaurant. Both of these are in the warehouse section at Oriole Park and are likewise open only to ticket holders on game days. However, they are also open on non-game days and during the off-season, and individuals do not require a game ticket to enter them on these days.

Though Maryland Sportservice has some operations on non-game days, the parties agree that "the overwhelming majority of its business is conducted exclusively with ticket holders during game baseball games." J.A. 186; *see id.* at 312. Appellants do not dispute that its average receipts at Oriole Park for the six months of 2011 in which receipts were smallest were not more than 33 1/3% of the average receipts for the other six months when receipts were the largest. Receipts in 2010 yield an even more stark comparison between the busiest six months and the others. Before Maryland Sportservice started operating the concessions at Oriole Park in 2010, ARAMARK operated them under substantially the same conditions. When the 2010 receipts for ARAMARK and Maryland Sportservice are considered together, the result is that the average receipts of

these entities during the off-season months of January through March and October through December are a mere 4.86% of the average receipts for the baseball season months of April through September. This disparity between the baseball season and the off-season is consistent with the fact that Maryland Sportservice has around 600 employees working at its operations on game days but as few as 12 employees working at the Team Store and Dempsey's on non-game days. This disparity is also typical of the concessions that DNC Sportservice operates at baseball stadiums through various subsidiaries. Its concession services at the Great American Ball Park in Cincinnati, Ohio, Progressive Field in Cleveland, Ohio, and Metro Bank Park in Harrisburg, Pennsylvania all had average receipts for the six months in 2010 with the smallest receipts that were not more than 33 1/3% of the average receipts for the other six months of 2010. Like Oriole Park, each of these other facilities is a baseball-only ballpark.

Appellants were employees of Maryland Sportservice's concessions. Hill was employed from March through most of June 2011, and Brown was employed from February to June 2011. individuals worked primarily as retail supervisors primarily at the Orioles Team Store but also did some work at the mini-gift and souvenir stands in Oriole Park. Appellants regularly worked in excess of forty hours, but Maryland Sportservice classified them as exempt from FLSA's overtime provision pursuant to the "amusement or recreational establishment" exemption and paid them only their regular hourly rate for the excess hours. investigated Maryland Sportservice's use of the exemption in 2012, but informed it on January 2, 2013 that DOL had found no violation of FLSA. The DOL provided no further explanation.

In September 2011, Hill commenced a putative class action, alleging that DNC Sportservice failed to pay him and other similarly-situated employees overtime compensation in violation of FLSA. In the same month, Brown filed a written consent to join this

action. In March 2013, the Baltimore Orioles Limited Partnership successfully moved to intervene.

In separate reports and recommendations on July 28, 2014 and December 15, 2014, the magistrate judge to whom the case was referred recommended that the district court grant DNC Sportservice's motions for summary judgment. The magistrate judge reasoned that DNC Sportservice qualified for the "amusement or recreational establishment" exemption from FLSA's overtime requirement because the concession activities "were an integral part of the amusement and recreational character of Oriole Park." Special App. 6. Turning to seasonality, it decided that DNC Sportservice "satisfied Test A of § 213(a)(3) since it did not operate for more than seven months in 2011" and declined to reach Test B. *Id.* at 8.

The district court adopted the respective reports and recommendations, and entered judgment. The Plaintiffs appealed.

## DISCUSSION

Our review of the district court's grant of summary judgment is de novo. *Pippins v. KPMG, LLP*, 759 F.3d 235, 239 (2d Cir. 2014). We may affirm summary judgment on any grounds with sufficient support in the record, even if they differ from the ones on which the district court relied. *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012). Whereas the district court appeared to suggest a general principle that an establishment can qualify if its operations are an integral part of a host establishment's amusement or recreational character, we adopt a narrower rule that a "concessionaire," as defined below, has the amusement or recreational character of its host. Also, whereas the district court reasoned that Maryland Sportservice satisfied the seasonal operations test, we decide instead that it satisfied the receipts test.

I.      **"Amusement or Recreational Establishment"**

FLSA does not define either "amusement or recreational establishment" or any of the individual words in this phrase. *See* 29 U.S.C. § 203. In *Chen v. Major League Baseball Properties*, *Inc.*, 798 F.3d 72 (2d Cir. 2015), our first and only case to deal with this exemption, we interpreted "establishment" to mean "a distinct, physical place of business as opposed to an integrated multiunit business or enterprise." *Id.* at 79. Though we also discussed the meaning of "amusement or recreational," the amusement or recreational character of the establishment in *Chen* was not contested as it is for the establishment here. *Id.* at 82. Thus, this case requires further analysis of the "amusement or recreational" aspect of the exemption. As in *Chen*, we first "determine, as a threshold matter, the meaning of the term" at issue and "then turn to the question of whether . . . the relevant establishment[] is covered by the exemption." *Id.* at 76.

A.      **Meaning of "Amusement or Recreational"**

As an initial matter, the meaning of "amusement or recreational" in this context is ambiguous. *See Chao v. Double JJ Resort Ranch*, 375 F.3d 393, 396-97 (6th Cir. 2004) ("'[r]ecreational establishment' is an ambiguous phrase"). In *Chao*, the court noted that "Congress clearly meant for there to be a limitation to the exemption, and the words used in the statute do not plainly convey where that boundary lies." *Id.* at 397. Though Appellants argue that it is "evident that Delaware North's operations, which are limited to the provision of food and retail services, are not of a recreational or amusement character," Appellants' Opening Br. 25, this proposition is actually only arguable. The food, drink, and merchandise that Maryland Sportservice sells at Oriole Park are predominately for baseball game attendees' use and consumption as they watch the game, and they enhance the amusement or recreational value of watching the game. For this reason, we believe its operations have

an amusement or recreational character because they provide a measure of amusement or recreation that would otherwise be absent from the stadium.

Because we are faced with textual ambiguity, we turn to the legislative history and to statements of the law from DOL, just as we did in *Chen*, 798 F.3d at 76–79.[1] Our first task is to identify the contours of the exemption. In this initial inquiry, we seek not a broad or narrow statutory construction, but the one that most accurately reflects congressional intent. We have said that FLSA "exemptions 'are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'" *Id.* at 81 (quoting *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 531 (2d Cir. 2009)). This rule, as stated, applies only after we have discerned the "terms and spirit" of a given exemption. Consistent with this approach, we did not especially aim in *Chen* for an interpretation of "establishment" that exempted as few workers as possible; instead, we examined different sources, and it was only after ascertaining the definition of "establishment" that we "narrowly construed" the exemption. *See* 798 F.3d at 76–79, 81–82.

### 1. Legislative History

We first examine the legislative history. Congress first specified that certain amusement or recreational establishments would be exempt in the 1961 amendments to FLSA. *See* S. Rep. No. 87-145, at 49, 68 (1961); *Chen*, 798 F.3d at 77. The relevant part of the 1961 provision exempted from overtime compensation "any employee employed by any retail or service establishment, . . . if

---

[1] Judge Livingston views § 213(a)(3), when considered in light of its original text and 1966 amendment and the DOL materials referenced herein, to be sufficiently clear as not to require resort to legislative history. Accordingly, although she joins in all other parts of this opinion, she does not join in the subsection that follows, to the extent it relies on legislative history.

such establishment . . . is an amusement or recreational establishment that operates on a seasonal basis."  Pub. L. 87-30, 75 Stat. 65, 71 (1961).  Consistent with this earlier statutory text, we observed that, at this time, "employees of an amusement or recreational establishment operating on a seasonal basis were exempt only if the establishment was also a 'retail or service establishment.'"  *Chen*, 798 F.3d at 77.

With the 1966 amendments to FLSA, the exemption took its current form.  Pub. L. 89-601, 80 Stat. 830, 833 (1966), (codified as amended at 29 U.S.C. § 213(a)(3)).  As we observed in *Chen*, the amended "wording seems to have been intended to establish criteria for seasonality, and by eliminating the retail and service language to make plain that employees of seasonal amusement or recreational companies generally are exempt."  798 F.3d at 77 (internal quotation marks omitted) (quoting *Marshall v. New Hampshire Jockey Club, Inc.*, 562 F.2d 1323, 1329 (1st Cir. 1977)).  Thus, any establishment that would have qualified under the 1961 version of the exemption also qualifies under the current version.

The committee reports for the 1961 amendments make clear that concessionaires at places of amusement or recreation had the amusement or recreational character required for the exemption.  The reports provide that "[a] similar exemption is provided for employees of amusement and recreational establishments operating on a seasonal basis.  These establishments are typically those operated by concessionaires *at* amusement parks and beaches and are in operation for 6 months or less a year."  H.R. Rep. No. 87-75, at 10 (1961) (emphasis added); *accord* S. Rep. No. 87-145, at 28.  With the word "at," Congress distinguished between concessionaires and the amusement parks and beaches that host them.  Thus, the legislative history treats concessionaires as core examples of amusement or recreational establishments, even when analyzed separately from the amusement or recreational sites they serve.  This history undermines Appellants' suggestion that a concessionaire can only qualify for the

exemption if it is part of the same establishment as the host amusement or recreational establishment.

That concessionaires are examples of exempt establishments also defeats Appellants' contention that Congress cannot have understood an establishment that sells food and merchandise to have an amusement or recreational character. Though the committee reports do not define "concessionaire," Merriam-Webster's Unabridged Dictionary defines it as "a person or firm that is the beneficiary of a concession," and a concession is most pertinently defined as "a lease of premises or a portion of premises for a particular purpose, especially for some purpose supplementary to another activity . . . or for providing entertainment." Furthermore, the definition of "concessionaire" gives as examples "one that owns or operates a stand or booth to sell refreshments or opportunities for entertainment to patrons of a recreational center (as a beach, park, or fair)," "one that holds the right to sell a particular type of product or service in a given location," and "one that provides food service in a factory, school, or other establishment." Based on this dictionary definition, we are comfortable in concluding that the essence of serving as a concessionaire is having a contractual arrangement with a host to operate on the host's premises to sell goods to the host's customers for them to use or consume, also on the host's premises, during the host's amusement or recreational activities.

Modest additional support that food and retail establishments can be amusement or recreational for the purpose of the exemption comes from language in the same committee reports deeming this exemption "similar" to one for "employees of a retail or service establishment employed primarily in connection with the preparation or offering of food for human consumption on the premises." S. Rep. No. 87-145, at 28; *accord* H.R. Rep. No. 87-75, at 10. It seems unlikely that Congress would have intended to exempt

11

these food service employees but not the ones selling food as part of the concessions at an amusement or recreational establishment.

Having found no statements in the legislative history or past versions of the statutory text that contradict the ones we have highlighted, we conclude that these sources reflect a congressional understanding that concessionaires that sell food, drink, and merchandise at amusement or recreational sites have the requisite amusement or recreational nature to qualify for the exemption.

### 2.    Statements from DOL

Further guidance comes from the DOL.  Among such statements, the most authoritative are the Department's rules.  In general, there are two types of rules: legislative rules, which have the force of law, and interpretive rules, which inform the public of the agency's construction of the statutes it administers.  *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1203-04 (2015).  Interpretive rules lack the force of law because they need not undergo notice-and-comment rulemaking as legislative rules do.  *Id.* at 1204.  For this reason, we defer to interpretive rules "only to the extent that we find them persuasive."  *Reiseck v. Universal Commc'ns of Miami, Inc.*, 591 F.3d 101, 106 (2d Cir. 2010) (citing *Skidmore v. Swift*, 323 U.S. 134, 140 (1944)).

Here, the potentially relevant regulations are merely persuasive because they are interpretive.  *See* 29 C.F.R. § 779.0 (describing the rules as "official interpretations . . . by which the Department of Labor will be guided"); The Fair Labor Standards Act as Applied to Retailers of Goods or Services, 35 Fed. Reg. 5856 (Apr. 9, 1970) (codified as amended at 29 C.F.R. § 779) (noting that the notice-and-comment rulemaking requirement was "not applicable because these are interpretive rules").  The rule that discusses the exemption most extensively is 29 C.F.R. § 779.385, which provides that:

> "Amusement or recreational establishments" as used in [29 U.S.C. § 213(a)(3)] are establishments frequented by the public for its amusement or recreation and which are open for 7 months or less a year or which meet the seasonal receipts test provided in clause (B) of the exemption. Typical examples of such are the concessionaires at amusement parks and beaches.

This passage implies that concessionaires at amusement or recreational sites can be "establishments frequented by the public for its amusement or recreation." Though not binding, this rule adds persuasive value and reinforces our view of the legislative history. Though legislative history can risk becoming "an exercise in looking over a crowd and picking out your friends," *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) (internal quotation marks omitted), the fact that DOL's interpretive rule on the exemption adopts the sentence about concessionaires gives us confidence that we have not taken that sentence out of context.

Two other interpretive rules confirm our view of the history of the exemption; they note that the exemption appeared in the 1961 amendment and was moved to a different section in 1966, without suggesting in any way that the exemption was narrowed in 1966. *See* 29 C.F.R. §§ 779.338, 779.381. No other rules dealing with retail establishments under FLSA conflict with these. Thus, there is consistency between the legislative history and DOL's interpretive rules in indicating that concessionaires can have an amusement or recreational character.

We next turn to DOL opinion letters. Though we have often relied on them, *Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 149 (2d Cir. 2008), we are not bound by them any more than we are bound by DOL's interpretive rules. The Supreme Court has stated that "opinion letters . . . do not warrant *Chevron*-style deference." *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000). Instead, the level of deference to "opinions of Administrator under" FLSA "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with

earlier and later pronouncements, and all those factors which give it power to persuade." *Skidmore*, 323 U.S. at 140.

One letter we find relevant is from 1967, which further supports our view that the 1966 amendments did not narrow the exemption. Comparing the 1966 and 1961 versions, the letter states that "the amended act does not require that the amusement or recreational establishment be a retail or service establishment as was required under . . . the prior act." U.S. Dep't of Labor Wage & Hr. Div. Op. Ltr., 1967 DOLWH LEXIS 164, at *3 (June 22, 1967) [hereinafter 1967 Letter]. If anything, this statement, combined with the legislative history, suggests that a concessionaire would have more clearly qualified under the 1961 amendments than the amusement or recreational establishments that hosted them because concessionaires are more obviously retail establishments.

However, the core message of the 1967 Letter is in tension with DOL's interpretive rule, 29 C.F.R. § 779.385. Whereas the interpretive rule treats a concessionaire as an exempt establishment on its own, the 1967 Letter seems to exempt concessionaires only as part of a combined establishment with their hosts by saying the exemption applies "provided the operations of the concessionaire and the host establishment constitute a single establishment which meets the requirements for the exemption." 1967 Letter, at *1. Since the 1967 Letter states that "it is only in rare instances that two or more business activities on the same premises . . . [will] constitute more than one establishment for the purpose of the exemption[]," *id.* at *2, it generally also indicates that 29 C.F.R. § 779.385 would apply. Nonetheless, the reasoning of these two statements differ in a significant way that would affect the application of the seasonality tests. For example, under 29 C.F.R. § 779.385, the receipts to measure for Test B would seem to be just the concessionaire's. In contrast, the 1967 Letter implies that the relevant receipts would be the combined receipts of the concessionaire and host establishment.

A different opinion letter from DOL, from 2009, may outright contradict 29 C.F.R. § 779.385. U.S. Dep't of Labor Wage & Hr. Div. Op. Ltr. FLSA2009-11, 2009 WL 649013 (Jan. 15, 2009) [hereinafter 2009 Letter]. The 2009 Letter dealt with "a concessionaire at a privately-owned recreational establishment" that "holds an exclusive contract with the owner of a recreational establishment to provide various catering services to the general public and to private parties who use the facility." *Id.* at *1. The DOL determined that this concessionaire "is not itself an amusement or recreational establishment, but is a legal entity separate from the recreational establishment where its employees work." *Id.* at *2. It concluded that this concessionaire "and the recreational establishment with which it contracts are not a 'single establishment'" and that it is thus ineligible for the exemption. *Id.*

Not only are the 1967 and 2009 Letters in tension with the legislative history and with 29 C.F.R. § 779.385, but they are also in tension with DOL's Field Operations Handbook. This "agency manual" is on the same level as "opinion letters," "policy statements," and "enforcement guidelines" as an interpretation of law. *See Christensen*, 529 U.S. at 587. In discussing the amusement and recreational exemption, it offers as a qualifying example establishments that sell food and other goods in national parks and similar areas when they are "limited by policy of the Interior or Agriculture Departments to merchandising only those items and providing only those services appropriate for the public use and enjoyment of the areas administered by them." U.S. Dep't of Labor Wage & Hr. Div. Field Operations Handbook, § 25j02 (2016). In these settings, "the activities of these establishments are considered to have a sufficiently intimate relation to the operation of these recreational areas to warrant their characterization as amusement or recreational establishments." *Id.* Here, as in 29 C.F.R. § 779.385, the establishments selling food or merchandise are exempt in their own

right, not because they constitute a single establishment with the national parks or other government-administered areas they serve.

Overall, it appears that DOL does not have a consistent position as to whether or how concessionaires will be deemed to have an amusement or recreational character. Fortunately, we are not required to reconcile apparent conflicts among non-legislative interpretations of law by DOL. In general, whether a non-legislative interpretation deserves deference under *Skidmore* depends on whether it is "consisten[t] with earlier and later pronouncements." 323 U.S. at 140. Instead of attempting to harmonize DOL's various pronouncements, we choose to follow the legislative history, adopted in 29 C.F.R. § 779.385, and hold that concessionaires at amusement or recreational establishments will qualify on their own as exempt establishments if they meet at least one of the seasonality tests in 29 U.S.C. § 213(a)(3). Following this approach, we define concessionaires as establishments whose purpose is to sell goods and services on the premises of an amusement or recreational host facility to the host's customers for their use or consumption on the host's premises as they participate in the host's amusement or recreational activities. To the extent that any of DOL's opinion letters or other non-legislative interpretations of FLSA conflict with this holding, we decline to give them any weight.

Our holding is a narrow one in three senses. First, with respect to concessionaires as defined above, we are not precluding the possibility that they might also qualify because their operations and those of their host establishments constitute a single qualifying establishment. Second, we do not intend to alter the effect or interpretation of any statements by DOL as they apply to establishments other than concessionaires. Third, we have limited our holding to establishments that are most commonly understood to be concessionaires. In so doing, we do not determine the outer limits of this category. Overall, we are merely providing an alternative path for archetypal concessionaires to qualify as

16

"amusement or recreational" establishments in their own right for the purposes of the exemption.

### B.    Application to Maryland Sportservice

We now consider whether Maryland Sportservice's operations at Oriole Park make it a concessionaire.  As an initial matter, Oriole Park, the host facility, clearly has an amusement or recreational character because of the baseball games it hosts.  Next, though Appellants contend that the concessions are physically separate from other activities at Oriole Park, they do not contest that Maryland Sportservice operates entirely within Oriole Park.  In any event, the fact that part of the park complex is a building separated by Eutaw Street does not mean that any operations in that building are operating on a different premises from the rest of the concessions.  Finally and most importantly, the parties agree that Maryland Sportservice's business is predominantly with ticket holders during game days.  It is clear to us that this establishment has as its primary purpose selling food, drink, and Orioles merchandise to customers of Oriole Park for their consumption and use as they participate in watching the baseball games held there.  For these reasons, Maryland Sportservice possesses the characteristics of a concessionaire described above.

The only remaining question arises from the small amount of business Maryland Sportservice does outside of game days with non-ticket holders, which are not activities of a concessionaire as defined above because these activities are not associated with a particular baseball game.  Operations on non-game days include the Orioles Team Store, where Appellants primarily worked, Dempsey's Brew Pub, and and rental of clubs and lounges at Oriole Park.  We think the disparity in the numbers of employees on game days compared to non-game days—as many as 600 versus as few as 12—makes the extent of operations that are not typical of a

concessionaire de minimis. We believe that, with our working definition of concessionaire, a de minimis level of non-concessionaire activities does not detract from an establishment's overall amusement or recreational character. For these reasons, we conclude that Maryland Sportservice is an "amusement or recreational establishment" under FLSA.

## II. Seasonality Tests

Operating as an amusement or recreational establishment is not sufficient to qualify for the exemption from overtime compensation. Rather, as noted, FLSA exempts such an establishment only "if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 per centum of its average receipts for the other six months of such year." 29 U.S.C. § 213(a)(3). Following the district court, we refer to these tests as "Test A" and "Test B." Roughly speaking, Test A is based on when during the year the establishment is open for business, whereas Test B is based on when it receives most of its revenue.

### A. Test A: Seasonal Operations

The text of Test A might suggest that an establishment must not engage in any activity at all for five months, even for maintenance purposes. However, DOL has interpreted "operate" to mean "operate[] as an amusement or recreational establishment." U.S. Dep't of Labor Wage & Hr. Div. Field Operations Handbook § 25j01(b). It has indicated that, "[i]f an establishment engages only in activities such as maintenance operations or ordering supplies during the dead season, it is not considered to be operating for the purposes of the exemption." *Id.* For example, it has advised that

lifeguards' off-season maintenance work would not cause their establishment to fail Test A:

> The fact that some of the lifeguards work more than seven months in the year maintaining the equipment would not serve to deny the exemption under [29 U.S.C. § 213(a)(3)], provided the establishment (the beach) is not open as a recreational facility (i.e., protected swimming) for more than seven months in any calendar year.

U.S. Dep't of Labor Wage & Hr. Div. Op. Ltr. WH-309, 1975 WL 40933, at *1 (emphasis removed) (Jan. 24, 1975). One of our sister Circuits has interpreted the seasonal operations test similarly, deciding that a baseball franchise satisfied the test even though "Plaintiff was employed in the off-season months relative to the preparation and maintenance of the baseball fields." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 596 (11th Cir. 1995). The Eleventh Circuit reasoned that "[i]t is the revenue-producing operation of the . . . franchise which affords it the protection of the exemption." *Id.*

Maryland Sportservice's operations at Oriole Park do not as obviously satisfy the seasonal operations test. While most of its business is tied to baseball games, which occur during a baseball season lasting no more than seven months, it continues to operate the Orioles Team Store and Dempsey's Brew Pub during the off-season. Its statement that individuals do not need a ticket to enter these places during the off-season strongly suggests that its employees are not simply performing maintenance or preparation work in this part of the year. If so, then under *Jeffery*, the business of the Team Store and Dempsey's would be part of Maryland Sportservice's "revenue-producing operation." Though the revenue from these operations is almost certainly de minimis, we are hesitant to hold that such operations are not occurring at all, especially since Test B deals with receipts and is apparently designed to measure revenue in different months.

We are also uncertain how DOL would decide this question. Maryland Sportservice cites several opinion letters for the proposition that a recreational establishment is not operating if it "is not open as a recreational facility." DOL Wage & Hour Op. Ltr. FLSA 2009-5, 2009 WL 648997 (Jan. 14, 2009); DOL Wage & Hour Op. Ltr., 1986 WL 1171127 (May 12, 1986); DOL Wage & Hour Op. Ltr., 1986 WL 1171081 (Jan. 17, 1986); DOL Wage & Hour Op. Ltr. WH-309, 1975 WL 40933 (Jan. 24, 1975). However, none of the scenarios discussed in these letters described involve revenue-producing operations, as opposed to maintenance. Also, while the DOL did investigate Maryland Sportservice's use of the exemption, it did not provide any explanation to support its finding of no violation. Thus, we are reluctant to bind this Court to a rule as to whether and when revenue-producing operations that are not for amusement or recreational purposes should count toward the seasonal operations test's seven-month limit.

### B.     Test B: Receipts

Fortunately, we need not articulate such a rule in this case because we readily conclude that DNC Sportservice satisfied the receipts test. The test is relatively straightforward to apply when the establishment has operated for the whole of the "preceding calendar year" but needs to be adapted when it began operating in the middle of the preceding year. Here, Maryland Sportservice employed Appellants in 2011 but only began to serve as the concessionaire at Oriole Park in November 2010. A literal reading of the text of Test B would yield an unfair advantage to establishments that start operating midyear because they would have no receipts in the months before they started operating. Since Maryland Sportservice started in November of the preceding calendar year, it would seem automatically to satisfy the receipts test because its receipts from January through June 2010, which would appear to be zero, would almost certainly not be more than a third of the average receipts for

July through December 2010, as the company conducted business in November and December.

At any rate, we question whether a literal reading of Test B in fact comports with § 213(a)(3)'s reasonable construction. *See* John F. Manning, *The Absurdity Doctrine*, 116 HARV. L. REV. 2387, 2486 (2003) (distinguishing "literal meaning" from "reasonable-user-of-language" approach to statutory interpretation and noting that latter approach "eliminates . . . putative absurdities . . . aris[ing] under a literal meaning framework"). Though we read a statute according to its plain language, the Supreme Court has cautioned against literal readings producing absurd results." *See Corley v. United States*, 556 U.S. 303, 317 (2009); *see also Local Union 36, Int'l Bhd. of Elec. Workers, AFL-CIO v. NLRB*, 631 F.3d 23, 27 (2d Cir. 2010). The result we have described above is absurd because it threatens to provide many amusement and recreational establishments a way to satisfy Test B before and during the first full year of operation even when they would fail the test in subsequent years. Looking beyond this literal interpretation, we think that, when an establishment was not operating during the entirety of the "preceding calendar year," it must have some functional equivalent of a preceding calendar year's record of receipts to satisfy Test B.

The DOL's Field Operations Handbook has recognized the need for such an approach, and it has offered establishments two ways of satisfying the receipts test:

a. If the enterprise of which the new establishment is a part operates other seasonal amusement or recreational establishments . . . of the same type in the same general area under substantially the same conditions and *all* such establishments conclusively and clearly meet the condition of Test B; *or*

b. If such employer does not have other such establishments but other employers operating the same type of establishment in the same general area under substantially the same conditions

> and manner of operation clearly are entitled to exemption under Test B.

§ 25j08(a)(2). Though DOL's application of the receipts test for new establishments is not binding, we choose to grant it *Skidmore* deference because we see the "thoroughness evident in its consideration," and "validity of its reasoning," and because we have not found any contrary interpretive statements from the DOL. 323 U.S. at 140.

DNC Sportservice claims that Maryland Sportservice's concessions at Oriole Park satisfied Test B in 2011 under both criteria (a) and (b) of DOL's test for new business, and Appellants do not dispute these claims. Corresponding to criterion (a), DNC Sportservice submits that, for its other baseball stadium concessions, the average receipts of the six months of 2010 with the smallest receipts were not more than 33 1/3% of the average receipts of the six months of 2010 with the greatest receipts. Since these other stadiums were baseball-only ballparks like Oriole Park, it appears that DNC Sportservice operated these other concessions "under substantially the same conditions" as the Oriole Park concessions. Since *all* these other establishments conclusively and clearly pass the receipts test, we conclude that the Oriole Park concessions satisfy prong (a), as well.

Even if these concessions did not satisfy criterion (a), criterion (b), which asks an employer to identify "other employers" that are similarly situated, would be satisfied. Here, DNC Sportservice identified the most closely analogous employer to Maryland Sportservice: its immediate predecessor in operating the same concessions at Oriole Park, ARAMARK. Since ARAMARK operated these concessions until November 2010, combining ARAMARK's receipts in 2010 with Maryland Sportservice's receipts for the remainder of that year arguably yields the best estimate of what Maryland Sportservice's receipts would have been in 2010 had it operated the concessions the entire year. The 2010 receipts imply a

clear entitlement to exemption under Test B, since the least busy six months had only 4.86% of the receipts of the other six months.

Though other plaintiffs might have contested whether these approximations to a preceding calendar year's receipts are close enough to show that Maryland Sportservice satisfies Test B, Appellants here have not done so. Instead, having contended (unpersuasively) that Maryland Sportservice has to qualify as part of a single establishment with Oriole Park, they assert that, even if Maryland Sportservice so qualifies, a genuine issue of material fact exists as to whether the combined single establishment satisfies either Test A or Test B. However, because we have decided that Maryland Sportservice qualifies in its own right as an amusement or recreational establishment by virtue of its function as a "concessionaire" operating at an amusement or recreational host, we need only consider whether Maryland Sportservice meets either of the seasonality tests. Thus, any issue of fact as to the seasonality of Oriole Park combined with Maryland Sportservice, even if genuine, is not material. Since Maryland Sportservice's statements as to various receipts are supported by sufficient evidence, we conclude that it was a seasonal establishment in 2011 under Test B.

## CONCLUSION

In sum, Maryland Sportservice is an "amusement or recreational establishment" because it is a "concessionaire" at an amusement or recreational facility, which Congress intended to exempt if it also meets one of the seasonality tests. Because Maryland Sportservice satisfies the receipts test as applied to new businesses under DOL's guidance, Appellants were exempt from overtime compensation under 29 U.S.C. § 213(a)(3). Accordingly, we AFFIRM the judgment of the district court.